# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRANDEN JOSEPH MALLOY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-cv-00777-JMB |
| | ) |
| MISSOURI DEPARTMENT OF | ) |
| CORRECTIONS, EASTERN | ) |
| RECEPTION, DIAGNOSTICS AND | ) |
| CORRECTIONAL CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Branden Joseph Malloy for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will order plaintiff to file an amended complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28

U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted a prison account statement as required by 28 U.S.C. § 1915(a)(2), alleging that his correctional facility is refusing to provide him a copy. (Docket No. 2 at 1; Docket No. 5 at 1). Nevertheless, having reviewed the information contained in the motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the court with a certified copy of his inmate account statement, the court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement or other documentation in support of his claim.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a self-represented litigant who is currently incarcerated at the Algoa Correctional Center in Jefferson City, Missouri. He brings this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs while an inmate at the Eastern Reception, Diagnostic and Correctional Center (ERDCC). His complaint names the Missouri Department of Corrections/ERDCC, Corizon Healthcare, and Nurse Cody as defendants. (Docket No. 1 at 2-3). Nurse Cody is sued in both an official and individual capacity.

The complaint is on a Court-provided 42 U.S.C. § 1983 form. In the "Statement of Claim" section of the complaint, plaintiff has written simply: "See Attachment." (Docket No. 1 at 3). Attached to the complaint are a number of exhibits, from which the Court is apparently supposed to piece together his claim. The exhibits consist of what seems to be eleven separate documents.

First, there is an informal resolution request (IRR) alleging "maltreatment by staff and medical [personnel] while in Covid-19[1] isolation." (Docket No. 1-1 at 1). Specifically, plaintiff asserts various violations of his constitutional rights stemming from his placement in the isolation unit, including denial of access to the grievance system, denial of access to the law library, and a lack of cleaning, sanitizing, and laundry service. Plaintiff further explains that on September 8, 2020, he was told to report to the isolation unit "without any explanations whatsoever." (Docket No. 1-1 at 2). While there, he states that he and others were denied medical treatment, that Nurse Cody and other Corizon Healthcare providers were not changing gloves or otherwise properly sanitizing, that he did not receive cleaning supplies, that his mail was withheld, that he had no access to his case manager, and that food was either withheld or was deplorable. (Docket No. 1-1 at 2-4).

The second exhibit is an offender grievance, in which plaintiff refers correctional staff to an IRR Log. (Docket No. 1-1 at 5). The response from the superintendent concludes that there is no evidence to substantiate plaintiff's grievance.

The third exhibit is a response to plaintiff's IRR, denying his request. (Docket No. 1-1 at 6). According to the findings, plaintiff's complaints center on the ERDCC's Viral Containment Plan, which "has been enacted and approved" to reduce COVID-19 exposure to both staff and

---

[1] COVID-19 is the name of the disease caused by the novel coronavirus known as SARS-CoV-2, which originated in China, and has spread globally, resulting in the declaration of a national emergency. *See* Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020). In the United States, the virus has resulted in hundreds of thousands of cases, and tens of thousands of deaths. *See In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020).

inmates. Pursuant to this plan, offenders who test positive are taken to a separate house to be quarantined. Regardless of plaintiff's complaints, the response indicates that plaintiff has not provided any evidence that he was maltreated or that his rights were violated.

The fourth exhibit is a grievance appeal response. (Docket No. 1-1 at 7). The grievance appeal response explains to plaintiff that he was placed into the isolation unit as part of the Viral Containment Plan, in order to stop the spread of COVID-19. As plaintiff had not provided any evidence that he was maltreated, his grievance appeal was denied.

The fifth exhibit is plaintiff's offender grievance appeal. (Docket No. 1-1 at 8). In the appeal, plaintiff states that he has compiled documents showing "Covid-19 malpractice" that will be part of his lawsuit. He alleges mistreatment, staff misconduct, medical negligence, and misuse of government funding, among other things. He closes the appeal with the notation that his remedies were exhausted, and that he will: "See you in court."

The sixth exhibit is a letter from the Missouri Attorney General regarding COVID-19 practices in the Missouri Department of Corrections. (Docket No. 1-1 at 9). It is apparently in response to an earlier letter sent by plaintiff. The letter states that the Attorney General's Office can take no action, and refers plaintiff to a contact at the Department of Corrections.

The seventh exhibit is a letter from the law firm of Newman Bronson & Wallis, declining to represent plaintiff in his civil case. (Docket No. 1-1 at 10).

The eighth exhibit is an undated letter written to a person identified as "Michelle ACLU." (Docket No. 1-1 at 11). Plaintiff begins the letter by asserting that the Missouri Department of Corrections was "purposely infecting offenders" with COVID-19 because of a $1,600 stipend the Department received from "the government." He concludes that the Department of Corrections is therefore committing embezzlement. Plaintiff goes on to state that he was denied medical

treatment, that nurses did not change their gloves, that there were no showers or recreational opportunities in isolation, that the food handling was poor, and that there were no sanitation chemicals. (Docket No. 1-1 at 12). He closes his letter by accusing the parole board of cancelling his release date and extending his sentence based on his lawsuit. (Docket No. 1-1 at 13).

The ninth exhibit appears to be lab results for an unidentified individual. (Docket No. 1-1 at 17). There is a handwritten notation on the document – presumably written by plaintiff – stating that he "was not supposed to get [his] hands on this document, but the nurse who came into the Covid isolation unit dropped it on her way out." Plaintiff does not explain the relevancy of the document, or why he believes he was "not supposed to get [his] hands on it."

The tenth exhibit is a handwritten document titled "In Re: Gross 8th Amendment Violations of MODOC Offenders." (Docket No. 1-2 at 1). In the document, plaintiff purports to list the "unconstitutionally offensive misconduct and practices" occurring in the isolation unit at the ERDCC. As before, plaintiff alleges a denial of medical treatment, that nurses were not changing their gloves, that Nurse Cody was "unprofessionally [insinuating] ongoing positive results for disdained offenders," that there was a lack of access to mail and case managers, that recreation, showers, and phone calls were being denied, and that food was "deplorable." (Docket No. 1-2 at 2-3). Most of the allegations are presented generally, on behalf of all the offenders in isolation. However, plaintiff does specifically assert – without any factual support – that the Missouri Board of Probation & Parole has conspired with the Missouri Department of Corrections to cancel his release date. (Docket No. 1-2 at 3).

Finally, the eleventh exhibit is a handwritten document apparently seeking a temporary restraining order against the Missouri Department of Corrections and the ERDCC from continuing certain practices with regard to COVID-19. (Docket No. 1-2 at 7).

With regard to relief, plaintiff asks the Court to "investigate each and every claim" and "to legitimize all the allegations of medical neglect and misconduct." (Docket No. 1 at 4). He also seeks $500,000 in damages.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming from the handling of the COVID-19 pandemic by the Missouri Department of Corrections, ERDCC, and Corizon. Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court has determined that plaintiff's complaint is subject to dismissal. However, he will be given the opportunity to file an amended complaint.

### A. Deficiencies in the Complaint

Plaintiff's complaint is deficient and subject to dismissal for several reasons. Most fundamentally, he has not complied with Rule 8 of the Federal Rules of Civil Procedure, which provides that "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff has not presented a "short and plain statement." Indeed, he has not presented any statement whatsoever, instead referring the Court to his exhibits. This does not comply with federal pleading rules. *See Ackra Direct Marketing Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) ("In general, pro se representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure"); *Micklus v. Greer*, 705 F.2d 314, 317 n.3 (8th Cir. 1983) (stating that the failure to comply with Fed. R. Civ. P. 8 made action subject to dismissal); and *Cody v. Loen*, 468 Fed. Appx. 644, 645 (8th Cir. 2012) (stating that a pro se litigant is not excused from

7

Fed. R. Civ. P. 8, "which requires a short and plain statement showing the pleader is entitled to relief").

With regard to the claim against the Missouri Department of Corrections/ERDCC, the Court notes that such a claim is treated as being made against the State of Missouri itself. The State of Missouri, however, is protected from suit by the doctrine of sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (explaining that the Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state); and *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"). Sovereign immunity under the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

As to Corizon, plaintiff has not demonstrated that Corizon harmed him due to a policy, custom, or official action. *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

Regarding Nurse Cody, plaintiff's chief complaint seems to be that she did not change gloves when administering COVID-19 swab tests, which he insists resulted in cross-contamination. This does not – without more – establish a deliberate indifference claim. *See Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019) (explaining that in order to establish deliberate indifference under the Eighth Amendment, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need). Furthermore, mere negligence or inadvertence does not rise to the level of deliberate indifference. *See Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). *See also Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment).

Many of plaintiff's exhibits reference things that have happened to other offenders. To the extent that plaintiff is trying to bring claims on behalf of others, the Court notes that he lacks standing. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (stating that "[a] prisoner cannot bring claims on behalf of other prisoners"); and *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983) (explaining that plaintiff did not have "standing to assert" a constitutional claim on behalf of another person). In other words, plaintiff must allege a personal loss. *See Sargent*, 780 F.2d at 1337.

For all these reasons, plaintiff's complaint is not sufficient to pass 28 U.S.C. § 1915 review. However, because plaintiff is proceeding as a self-represented litigant, he will be allowed the opportunity to file an amended complaint according to the instructions set forth below. Plaintiff **must** follow these instructions.

B. **Amendment Instructions**

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible. In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed.

Plaintiff should fill out the complaint form in its entirety, and ensure that it is signed. This includes the "Statement of Claim" section, which must contain plaintiff's allegations against each defendant.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain

statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

**Plaintiff may only bring claims on behalf of himself**. As discussed above, he lacks standing to bring claims on behalf of other prisoners. Therefore, the facts plaintiff presents should focus on the alleged violation of *his* constitutional rights, not the rights of others.

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the dismissal of that defendant. **If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff**.

## C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. In particular, the Court has determined that plaintiff's complaint is subject

to dismissal, and has ordered him to file an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within thirty (30) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form in accordance with the instructions set forth above within **thirty (30) days** of the date of this order, the Court will dismiss this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon the filing of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 16th day of November, 2021.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE