# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRANDEN JOSEPH MALLOY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-cv-00777-JMB |
| MISSOURI DEPARTMENT OF CORRECTIONS, EASTERN RECEPTION, DIAGNOSTICS AND CORRECTIONAL CENTER, et al., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on review of plaintiff Branden Joseph Malloy's amended complaint pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**Background**

Plaintiff is a self-represented litigant. On June 28, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, naming the Missouri Department of Corrections and Corizon as defendants. (Docket No. 1). At the time he filed the complaint, he was an inmate at the Algoa Correctional Center in Jefferson City, Missouri.[1] In the complaint, he alleged deliberate indifference to his

---

[1] Based on a change of address received by the Court, it appears that plaintiff has since been released from custody.

medical needs with regards to the handling of the COVID-19[2] epidemic while he was at the Eastern Reception, Diagnostic and Correctional Center (ERDCC).

Along with his complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (Docket No. 2). The Court granted the motion on November 16, 2021, and assessed an initial partial filing fee. (Docket No. 6). Because he was proceeding in forma pauperis, the Court reviewed plaintiff's complaint under 28 U.S.C. § 1915. Based on that review, the Court determined that the action was subject to dismissal, because plaintiff had not provided "a short and plain statement of the claim showing that" he was "entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The Court also noted that plaintiff's claim against the Missouri Department of Corrections was barred by the doctrine of sovereign immunity, while he had not stated a claim against Corizon as he had failed to show he had been harmed by a policy, custom, or official action.

Rather than dismissing the case outright, the Court gave plaintiff an opportunity to file an amended complaint. The Court's order gave him thirty days to amend, and provided instructions on how to do so. Plaintiff submitted his amended complaint on December 10, 2021. (Docket No. 8).

**The Amended Complaint**

Plaintiff's amended complaint is brought pursuant to 42 U.S.C. § 1983, and names Corizon Healthcare as the sole defendant. (Docket No. 8 at 2). In his "Statement of Claim," he asserts that Corizon committed "medical negligence" while he was in the ERDCC. (Docket No. 8 at 3). This allegedly occurred from September 8, 2020 to October 15, 2020.

---

[2] COVID-19 is the name of the disease caused by the novel coronavirus known as SARS-CoV-2, which originated in China, and has spread globally, resulting in the declaration of a national emergency. *See* Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020). In the United States, the virus has resulted in hundreds of thousands of cases, and tens of thousands of deaths. *See In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020).

By way of further explanation, plaintiff states that he was mistreated "by medical staff while in the COVID-19 isolation unit," and that "staff refused to assess [his] medical needs" even though he was "asking for medical assistance on a daily basis for the symptoms [he] was experiencing." Those symptoms included chest pain, breathing problems, nausea, migraines, and body aches.

Plaintiff contends that "Corizon as an entity, and its employees at the ERDCC institution failed to give [him] proper medical treatment," which "resulted in permanent medical issues." (Docket No. 8 at 4). He states that these ongoing issues are "a direct result of medical negligence" and that he "would not be suffering from these medical issues if Corizon had a sound procedure for treating [him] after being infected by the COVID-19 virus."

In an attachment to the amended complaint, plaintiff provides further factual allegations, stating that on September 8, 2020, Officer Whitehead told him and several other offenders to report to the COVID-19 isolation unit. (Docket No. 8 at 7). He asserts that he did not receive "any explanations" and that the "ERDCC's COVID-19 isolation unit policy…was shocking to the [conscience]," and "caused an unnecessary and wanton infliction of emotional distress and 8th Amendment violations."

With a bit more specificity, plaintiff states he and other "alleged COVID-19 positive offenders" were detained "for an initial 14 days for retesting." He then asserts that he was "denied…any medical attention and treatment whatsoever," noting that "Nurse Cody told us repetitively [that] 'Your temperature must be 104º before we give you any medical treatment.'" Plaintiff alleges that he "tried to self-declare for chest pains and hardness of breathing" on "multiple" occasions, and states that "a nurse or medical professional" never came to assess his condition. Immediately after making this statement, however, he acknowledges that the "first two

4

mornings" he self-declared, someone did, in fact, come and check his vitals. Plaintiff also complains that "Nurse Cody and Corizon Health Care providers" conducted COVID-19 testing on offenders "without changing gloves per each tested offender."

In addition, plaintiff states that he was denied cleaning supplies and laundry services between September 8, 2020 and October 15, 2020; that "negative, inconclusive, positive offenders" were placed "in cells without sterilizing"; that while he was in the isolation unit, he did not have enough space to social distance per the "MODOC-CDC's COVID-19 containment" protocol; that he was denied mail services while in COVID-19 isolation; that he did not have access to case managers while in COVID-19 isolation; that unidentified correctional officers withheld food as punishment; that he was denied daily recreation, showers, phone calls, and canteen spends while in COVID-19 isolation; and that the food was "deplorable and poorly prepared." (Docket No. 8 at 8-9).

As a result of contracting COVID-19, plaintiff asserts that he still suffers from chest pains, migraines, and breathing problems, and has been told "there is no treatment available for COVID related issues except vaccination." (Docket No. 8 at 4). He is seeking $500,000 in damages. (Docket No. 8 at 5).

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that Corizon Healthcare was medically negligent in the way it treated him when he contracted COVID-19. Because he is proceeding in forma pauperis, the Court reviewed his amended complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. Claim Against Corizon

Plaintiff has named Corizon as the sole defendant in this lawsuit, accusing it of medical negligence and mistreatment. Corizon is a private corporation contracted by the Missouri Department of Corrections to provide healthcare to inmates. To support a claim against a corporation acting under color of state law, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *See Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

In this case, plaintiff has not identified any Corizon policy, custom, or official action as causing him harm or violating his constitutional rights. He broadly states that he "would not be suffering from these medical issues if Corizon had a sound procedure for treating" him after he was infected by COVID-19, but he provides absolutely no factual support for this proposition. That is, he does not point to any specific medical intervention that was denied to him, and he certainly does not allege that he was denied anything based on a decision attributable to Corizon itself.

Plaintiff does assert that a Corizon nurse told him that "medical treatment" would not be given until a person's temperature reached 104 degrees. However, even assuming that this decision is medically improper – which he has not shown – plaintiff has not presented facts attributing the

nurse's statement to a Corizon policy, custom, or official action. Likewise, plaintiff's complaint regarding Corizon staff not changing their gloves is not factually attributed to a Corizon policy, custom, or official action, and has not been shown to have harmed him.

The general thrust of plaintiff's amended complaint is that the institution of a containment plan following the outbreak of COVID-19 resulted in his mistreatment. Even assuming that the plan came from Corizon, rather than the Missouri Department of Corrections, plaintiff has simply not presented any facts that it violated his rights. For instance, he asserts that when he contracted COVID-19, he was placed into isolation with other inmates who also had COVID-19. However, he provides no facts indicating that the separation of sick individuals from healthy individuals during a pandemic is inappropriate, rather than a sound quarantine measure. The Court notes that the "COVID-19 pandemic" is an "unprecedented health crisis" that has affected "the nation and the world." *See In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020). In light of this context, plaintiff has not put forth sufficient facts showing that the response to this crisis is violative of his constitutional rights.

Instead of alleging facts establishing that a Corizon policy, custom, or official action violated his constitutional right to adequate healthcare, plaintiff seems to assert that Corizon is liable simply because the individuals it employed acted inappropriately. Even assuming that a Corizon employee violated one of plaintiff's constitutional rights – which plaintiff has not established – respondeat superior is not available in a 42 U.S.C. § 1983 action. *See Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007) ("A corporation acting under color of state law cannot be liable on a respondeat superior theory").

The Court notes that to the extent a "policy" is mentioned at all, it is with regard to the "ERDCC's COVID-19 isolation unit policy," enacted in response to COVID-19. Specifically,

plaintiff objects to the sanitation efforts, laundry services, social distancing protocols, mail services, access to case managers, quality of the food, behavior of unidentified correctional officers, daily recreation, showers, phone calls, and canteen spends. None of these items is alleged to be within the purview of Corizon, but is instead the responsibility of the Missouri Department of Corrections. Obviously, with the exception of medical services, Corizon cannot be held liable for conditions of confinement at the ERDCC. In any event, plaintiff does not show how these conditions violated his particular constitutional rights, but simply presents them as a list without any corresponding factual support.

For all these reasons, plaintiff has failed to state a claim against Corizon. Therefore, the claim must be dismissed.

**B. Claim Against Missouri Department of Corrections**

Unlike in the original complaint, plaintiff has not specifically named the Missouri Department of Corrections as a defendant in the amended complaint. Nevertheless, he notes that the Missouri Department of Corrections is Corizon's "employer," and includes a number of allegations concerning prison conditions of confinement. To the extent that plaintiff intended to sue the Missouri Department of Corrections, however, the claim must be dismissed for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining

that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983").

In this case, plaintiff is seeking money damages against the State of Missouri. A state is not a 42 U.S.C. § 1983 "person" for purposes of such a claim. As such, plaintiff is missing an essential element of a § 1983 action, and the claim must be dismissed.

Second, any suit against the Missouri Department of Corrections would be barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment's grant of sovereign immunity bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such

9

immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In this case, the Missouri Department of Corrections is an agency of the State of Missouri. As such, sovereign immunity bars suit against it for any type of relief, be it monetary or injunctive. Furthermore, no exceptions to sovereign immunity are present. Therefore, for this reason as well, any claim against the Missouri Department of Corrections must be dismissed.

## C. Claim Against Nurse Cody

Plaintiff has not named Nurse Cody as a defendant in this action. Nevertheless, he has presented allegations against Nurse Cody relating to his treatment. To the extent that plaintiff intended to sue Nurse Cody, the claim is subject to dismissal.

To begin, plaintiff has not indicated the capacity in which Nurse Cody is sued. A plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id*. *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl*, 72 F.3d at 619 ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

Because plaintiff has not indicated the capacity in which Nurse Cody is sued, Cody is presumed to be sued in an official capacity only.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir.

11

2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Nurse Cody is alleged to be employed by Corizon. Thus, an official capacity claim against Nurse Cody is treated as being made against Corizon itself. However, as discussed above, plaintiff has not demonstrated that Corizon harmed him due to a policy, custom, or official action. Therefore, the official capacity claim must be dismissed.

Even if the Court were to assume that Nurse Cody was sued in an individual capacity, plaintiff has still failed to state a claim. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). A plaintiff attempting to claim deliberate indifference must establish both the objective and subjective components. *See Thompson v. King*, 730 F.3d 742, 746 (8th Cir. 2013).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). *See also Davis v. Buchanan County, Missouri*, 11 F.4th 604, 624 (8th Cir. 2021).

To prevail under the deliberate indifference standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). *See also Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (explaining that "plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the arrestee's health"). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff has not established that Nurse Cody acted so inappropriately "as to evidence intentional maltreatment or a refusal to provide essential care." That is, plaintiff has not shown that Nurse Cody denied or delayed any necessary interventions with regard to his COVID-19. For example, he has not alleged that his symptoms were so severe that he required hospitalization, but that Nurse Cody refused. Indeed, despite broadly asserting the denial of "any medical treatment," plaintiff has not identified any specific treatment that he requested but did not receive. To the extent that plaintiff is upset that Nurse Cody did not change gloves, he has not

13

demonstrated any resulting harm. Moreover, medical malpractice is not actionable under the Eighth Amendment. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008).

For all these reasons, even if Nurse Cody had been properly named as a defendant, any claim against Cody would be subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 28th day of February, 2022.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE